UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTY LYNN O'BRIEN,

                Plaintiff,                Case No. 2:18-cv-13422
                                            District Judge Gershwin A. Drain
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 11), GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 14) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

        Plaintiff, Christy Lynn O'Brien, brings this action under 42 U.S.C. §§

405(g), 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her applications for Disability Insurance (DI)

and Supplemental Security Income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion
for summary judgment (ECF No. 11), the Commissioner's cross-motion for
summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15) and the
administrative record (ECF No. 9).

### A.      Background and Administrative History

Plaintiff alleges her disability began on February 1, 2014, at the age of 39.
(R. at 185, 193.)  In her disability report, she lists several conditions (lumbar
degenerative disc disease (DDD), fibromyalgia, hypertension, hyperlipemia,
migraines, depression, anxiety, insomnia, dysmenorrhea, edema, and high
cholesterol) as limiting her ability to work.  (R. at 247.)  Her applications were
denied in September 2016.  (R. at 74-125.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.
at 128-129.)  On December 13, 2017, ALJ Earl Ashford held a hearing, at which
Plaintiff and a vocational expert (VE), Joseph Thompson, testified.  (R. at 50-73.)
On May 21, 2018, ALJ Ashford issued an opinion, which determined that Plaintiff
was not disabled within the meaning of the Social Security Act.  (R. at 7-32.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at
181-184.)  However, on September 28, 2018, the Appeals Council denied
Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Ashford's decision became
the Commissioner's final decision.

2

Plaintiff timely commenced the instant action on November 1, 2018.

**B.     Plaintiff's Medical History**

The administrative record contains approximately 628 pages of medical records, which were available to the ALJ at the time of his May 16, 2018 decision. (R. at 31-32, 322-949 [Exhibits 1F-23F].)  These materials will be discussed in detail, as necessary, below.

**C.     The Administrative Decision**

At the administrative hearing, Plaintiff amended her alleged onset date (AOD) to July 28, 2016.  (R. at 55; *see also* R. at 215, 312-313.)  Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 28, 2016, the amended alleged onset date.  (R. at 13.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  degenerative disc disease (DDD) with chronic sacroiliitis, fibromyalgia, hypertension, affective disorder, and anxiety disorder.  (*Id*.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 13-16.)  **Between**

**Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual

functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform **[1]** light work [*i.e., exertional limitations*] . . . except:
> **[2]** *postural limitation[s]* of occasional climbing of ladders, ropes, or
> scaffolds; occasional climbing of ramps and stairs; occasional
> balancing, stooping, kneeling, crouching and crawling; **[3]** occasional
> use of the bilateral lower extremities for operation of foot controls
> [*i.e., exertional limitations*]; **[4]** *manipulative limitation[s]* of frequent
> use of the bilateral upper extremities for reaching, handling, and
> fingering; **[5]** *environmental limitation[s]* to avoid concentrated
> exposure to hazards, such as dangerous moving machinery and
> unprotected heights; **[6]** work limited to simple, routine, and repetitive
> tasks in a work environment free from fast paced production
> requirements, such as moving assembly lines and conveyor belts,
> involving only work related decisions [*i.e., sustained concentration
> and persistence limitations*], with **[7]** few, if any, work place changes
> [*i.e., adaptation limitations*].

(*Id*. at 16-25 (emphases added).) At **Step 4**, the ALJ determined that Plaintiff was

unable to perform any past relevant work. (*Id*. at 25.) At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined that

there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as folder, production inspector, and packer. (*Id*. at

26-27.) The ALJ therefore concluded that Plaintiff had not been under a disability,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

as defined in the Social Security Act, since July 28, 2016, through the date of the decision.  (*Id*. at 27.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.    Analysis**

**1.    Specific assignments of weight**

In the present appeal, Plaintiff presents two alleged errors, each of which concerns the ALJ's treatment of the opinion evidence, within which there were at least seven express assignments of weight, the two most pertinent to this appeal being:

- R. Scott Lazzara, M.D.'s August 8, 2016 consultative examination report (R. at 669-675), to which the ALJ assigned "some weight"

- Treating physician Melissa VanSickle M.D.'s December 30, 2016 lumbar spine RFC questionnaire (R. at 688-691), December 30, 2016 physical medical source statement (MSS) (R. at 694-697), and November 28, 2017 physical MSS (R. at 834-837), to which the ALJ assigned "little weight"

(R. at 19-25.)

Plaintiff claims the ALJ erred by assigning only little weight to Dr. VanSickle's opinions and only some weight to CE Dr. Lazzara's opinion. (ECF No. 11, PageID.1011-1015.) In other words, Plaintiff takes issue with the ALJ's treatment of "[t]he only two opinions on functional restrictions in this case from physicians who have actually examined Plaintiff . . . ." (ECF No. 11, PageID.1015.) Conversely, the Commissioner contends that the ALJ properly evaluated the opinion evidence. (ECF No. 14, PageID.1029-1035.)[2]

---

[2] Neither Plaintiff's motion nor her brief contains a list of issues presented, although her arguments are clearly labeled. (*See* ECF No. 11, PageID. 1011-1015.) Plaintiff's counsel is reminded that "[a] brief supporting a motion or response must, at the beginning, contain a concise statement of the issues presented . . . ." E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs."). Moreover, the Undersigned's Practice Guidelines regarding briefing in Social Security cases, provides, in part: "Any issue addressed in the brief that is not both 1) included in Issues Presented and 2) labeled as a section heading within the brief, will not be considered by the Court." *See* www.mied.uscourts.gov (last visited Jan. 21, 2010). The clarity with which the issues were labeled in the brief causes the Court to refrain from enforcing this guideline here; however, Plaintiff's counsel is cautioned

## 2.   Melissa VanSickle, M.D. (treating physician)

The transcript contains treatment records from Dr. VanSickle that are dated from June 10, 2015 to May 4, 2017.  (R. at 518-573 [Ex. 6F], 576-632 [Ex. 8F], 838-949 [Ex. 23F].)  The ALJ cited portions of these exhibits throughout his decision.  (*See* R. at 13-25.)

The ALJ also cited Dr. VanSickle's above-described MSSs, which, *inter alia*, opine that Plaintiff has remarkably restrictive limitations on sitting, standing, walking, lifting and carrying (*i.e.*, exertional activities) and that Plaintiff was never able to twist, stoop (bend), crouch / squat, climb ladders or climb stairs (*i.e.*, postural activities).  (R. at 19; R. at 689-691, 695-696, 835-836).  Finding that the objective evidence does not support Dr. VanSickle's opinions, the ALJ noted:

> The claimant's <u>family medicine treatment</u> records reflected the claimant had trigger point tenderness, pain and/or tenderness  with range of motion  in the cervical, thoracic and lumbar spines and spasms at times (Exhibits 6F/32-33, 39, 47, 21F/5, 16-17 and 23F/6, 13-14, 22-30, 37-46, 53-60).  *Nevertheless*, the claimant's <u>family medicine treatment</u> examinations otherwise consistently failed to demonstrate that the claimant had any neurological deficits while no abnormalities in her gait were noted until May 2017 (Exhibits 6F/32-33, 39, 47, 21F/5, 16-17 and 23F/6, 13-14, 22-30, 37-46, 53-60).  Other examiners *also* displayed the claimant had five out of five strength in her upper and lower extremities, intact sensation and brisk, symmetric reflexes (Exhibits 11F/7, 12F/5-7, 16F/4-5, 8 and 17F/6, 24).

---

that future failures to comply with this requirement may result in the Court's refusal to address each of the movant's intended arguments.

> *Moreover*, the claimant's <u>family medicine treatment</u> records
> consistently revealed the claimant's orientation, respiratory,
> cardiovascular and vascular exams were normal while she had no
> edema in the extremities (Exhibits 6F/32-33, 39, 47, 21F/5, 16-17 and
> 23F/6, 13-14, 22-30, 37-46, 53- 60).  The claimant herself *also*
> repeatedly  denied experiencing any edema, vision changes, nausea,
> vomiting, dyspnea, visual disturbances or dizziness  to her family
> medicine  provider since her amended alleged onset date (Exhibit
> 6F/32, 38, 21F/4, 15, 23F/5, 17, 33, 49, 53-59).

(R. at 20 (emphases added).)  Thus, it is clear that the ALJ took into consideration

the examining relationship, treatment relationship, supportability and/or

consistency factors when assigning "little weight" to Dr. VanSickle's opinions.  20

C.F.R. §§ 404.1527(c)(1)-(4), 416.927(c)(1)-(4).[3]

Plaintiff contends that "[n]one of this undermines Dr. Van Sickle's

opinion[,]" and specifically points to the September 2016 lumbar spine MRI, the

findings for which included "moderate-severe left L5-S1 neural foraminal

stenosis."  (ECF No. 11, PageID.1011; R. at 572-573, 752-753.)  However, after

the various findings, the diagnostic imaging report listed several impressions,

which, *inter alia*, included:

> Mild-moderate lumbar spondylosis.  Spondylotic changes combine
> with facet hypertrophy to result in mild central canal stenosis at L3-

---

[3] To the extent the Commissioner responds that disability is an issue reserved to the
Commissioner and that predictions regarding absenteeism or being off-task are not
medical opinions entitled to deference (*see* ECF No. 14, PageID.1031), Plaintiff
appropriately observes that these were not the bases of the ALJ's criticism of Dr.
Van Sickle's opinion(s).  (R. at 19-20, ECF No. 15, PageID.1041.)

L4.  The spondylotic changes have mildly progressed/worsened since 4/4/2014.

Bilateral pars interarticularis defects/spondylolysis at L5 contributes to minimal anterior grade 1 subluxation / spondyloliathesis of L5 with respect to upper sacrum.

(R. at 573, 753.)  More to the point, the ALJ expressly referenced the April 4, 2014 and September 2016 lumbar spine MRIs and noted: "mild to moderate degenerative changes and bilateral pars interarticularis and/or spondylolisthesis at L5 prior to the amended alleged onset date with a radiologic image noting of only mild progression compared to that imaging after the fall in September 2016 . . . ." (R. at 19, R. at 326-330, 413-416, 572-573, 752-755.)

Plaintiff also points to the interventions recommended within:  (a) Dr. Junn's January 6, 2017 progress notes, namely Plaintiff "will require operative intervention due to the instability of the spine[,]" (R. at 702, 705); (b) Amritraj Loganathan, M.D.'s March 13, 2017 records, namely Plaintiff "would only have a 50/50 shot at a successful surgery at best[,]" but "was given the option of a spinal cord stimulator and a pain pump[,]" (R. at 819, 822 [Ex. 21F]); and, (c) Louis D. Bojrab, M.D.'s September 7, 2016 records, namely the diagnosis of "[s]evere lumbar back pain with history of pars defects and spondylolisthesis . . . [,]" (R. at 730), which was followed by November 8, 2016 medial branch blocks of the lumbar spine at L3-L5 bilaterally and December 21, 2016 L4/5 interlaminar epidural steroid injection (R. at 719).  (ECF No. 11, PageID.1012.)

10

Perhaps, as Plaintiff puts it, Drs. Junn and Loganathan did not conclude that "Plaintiff was fine and not in significant pain." (*Id.*) Still, pointing to their or Dr. Bojrab's recommended or implemented interventions does not satisfy Plaintiff's burden to overturn the ALJ's RFC determination. First, the ALJ – having previously characterized Plaintiff's "consult with a neurosurgeon for her low back pain in January 2017" as a "rather unremarkable" examination, having acknowledged Dr. Junn's desire for Plaintiff "to remain off work until treatment can be offered[,]" and having noted his conclusion that "[t]he fall she experienced in July of 2016 likely exacerbated the symptoms she has been experiencing[,]" – explained the assignment of "little weight" as based on the opinion's temporary and conclusory nature. (R. at 19-20, 702, 705.) Thus, the ALJ appropriately discounted Dr. Junn's opinion based on the supportability factor, even if the surgery recommendation was not expressly mentioned. 20 C.F.R. § 404.1527(c)(3), 416.927(c)(3).[4] Second, the ALJ cited Dr. Loganathan's March 13, 2017 notes no less than three times, and in one such case as partial support for the statement that "a general practitioner appeared to render all treatment for [hypertension or fibromyalgia] since the amended alleged onset date[.]" (R. at 17,

---

[4] While Plaintiff mentions her objection to the ALJ's handling of this opinion, Plaintiff also confines her arguments "to those raised in [her] brief." (ECF No. 11, PageID.1012 n.1.)

18, 22, 819, 822).  Likewise, the ALJ cited Dr. Bojrab's September 7, 2016 notes on at least four different occasions, in each case as an "other examiner," seemingly to acknowledge the physical examination's strength, reflex and lumbar spine findings.  (R. at 20-22, 730.)  Thus, the ALJ considered these records, and, even if he did not expressly mention the spinal cord stimulator or pain pump, he twice mentioned "pain management treatment records," in the latter case expressly noting:

> Ensuing pain management records also reveal the claimant underwent lumbar medial branch blocks and injections beginning in November 2016 ([R. at 714-718, 720-722, 724-726]).  Fortunately, after their completion, the claimant subsequently appeared in no acute distress with her gait intact at an appointment in March 2017 ([R. at 711-712]).

(R. at 17-18.)  In sum, Plaintiff's references to Drs. Junn, Loganathan and Bojrab's "significant medical intervention[s][,]" (ECF No. 11, PageID.1012), constitute a request to reweigh the evidence, which this Court cannot do.  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)); *see also Haun v. Comm'r of Soc. Sec.*, 107 F.App'x 462, 465 (6th Cir. 2004).

### 3.    R. Scott Lazzara, M.D. (consultative examiner)

Dr. Lazzara compiled his CE observations in a narrative report.  (R. at 671-675.)  The musculoskeletal examination revealed tenderness over both rhomboid regions.  (R. at 672.)  Dr. Lazzara also noted "*moderate* difficulty heel and toe

walking, *mild* difficulty squatting, and *mild* difficulty standing 3 seconds on either foot." (*Id.* (emphases added).)  Moreover, "[o]rthopedic maneuvers were limited by pain."  There was also "paravertebral muscle spasm and lumbar spine straightening[,]" and "tenderness over both SI joints with pilonidal cysts that were mobile and tender." (*Id.*)  Plaintiff had limited range of motion in her dorsolumbar spine and her hands/fingers.  (R. at 673-674.)  Neurologically, Dr. Lazzara noted that Plaintiff "walks with a guarded gait *without the use of an assist device*." (R. at 674 (emphasis added).)

Ultimately, Dr. Lazzara's conclusion observed, *inter alia*, that "[m]uch of this appears to be due to chronic sacroiliitis[,]" but Plaintiff "also had a significant myofascial component."  (R. at 675.)  Plaintiff had "difficulty with orthopedic maneuvers due to complain[t]s of pain[,]" "compensate[d] with a guarded gait but [did] appear stable enough not to need an assistive device[,]" and "[wa]s on narcotic pain management[,]" although she "d[id] not appear to require operative intervention" at the time of the examination.  (*Id.*)  On the date of the examination, Dr. Lazzara also completed a form "neurologic and orthopedic supplemental report," wherein he assessed certain exertional and postural limitations.  (R. at 669-670.)  Exertional limitations include activities such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  Postural limitations include activities such as reaching, handling, stooping,

climbing, crawling, or crouching. 20 C.F.R. §§ 404.1569a(c)(vi), 416.969a(c)(vi).

Importantly, Dr. Lazzara's sitting limitation, 2-4 hours in an 8-hour workday (R. at

669), is less than what is required by sedentary work, for which "[s]itting would

generally total about 6 hours of an 8-hour workday." POMS DI 25015.020(B)(1).

The ALJ expressly considered Dr. Lazzara's narrative report and the

assessment form. (R. at 20-22.) In assigning the opinion "some weight," ALJ

Ashford explained that this was a "one-time evaluation," *i.e.*, not a "longitudinal"

picture, "which lessens the persuasiveness of the opinion." (R. at 21.) Thus, it is

clear the ALJ considered the examining relationship factor and the treatment

relationship factor, or at least the lack thereof. 20 C.F.R. §§ 404.1527(c)(1),(2),

416.927(c)(1),(2). The ALJ also found that the objective evidence did not support

the CE's opinions on Plaintiff's abilities to sit, stand, carry, push, pull or use an

assistive device, *i.e.*, exertional limitations. (R. at 21.) Yet, the ALJ further found

that the objective evidence supported the CE's opinions that Plaintiff was

posturally limited to occasional stooping and squatting. (*Id*.) Moreover, the ALJ

cited Dr. Lazzara's observations of intact grip strength, unimpaired dexterity, and

normal shoulder range of motion among the justifications for the assessed

manipulative limitations. (R. at 21-22, 672.) Thus, it is clear the ALJ considered

the supportability and/or consistency factors. 20 C.F.R. §§ 404.1527(c)(3),(4),

416.927(c)(3),(4). As the Commissioner correctly notes, "[b]ecause the ALJ gave

valid reasons for discounting [Dr. Lazzara's] opinion, his determination should be upheld."  (ECF No. 14, PageID.1034.)  *Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. Contrary to Justice's contention, the ALJ had the authority to make these determinations.").

Plaintiff argues that the ALJ should have assigned more than "some weight" to Dr. Lazzara's opinion, contending that the ALJ's rationale "doesn't withstand scrutiny . . . ."  (ECF No. 11, PageID.1013.)  Specifically, Plaintiff points to the following portion of the ALJ's opinion:

> Dr. Lazzara observed that the claimant had a guarded gait[,] but it appeared stable enough that she did not need an assistive device and she only had mild difficulty balancing on each leg for three seconds, which contradicts the doctor's opinion the claimant needs a walking aide for more than 200 yards and assistance climbing stairs ([R. at 670, 674-675]).

(*Id.*, R. at 21.)  Then, Plaintiff claims this "doesn't undermine Dr. Lazzara's conclusion about Plaintiff's other functional restrictions, nor does the ALJ's reliance on normal strength, sensation, and reflexes."  (ECF No. 11, PageID.1013.) Instead of these neurological observations, Plaintiff points the Court's attention to the September 2016 lumbar spine MRI.  (*Id.*, R. at 572-573, 752-753).  Yet, as noted above, the ALJ expressly referenced the April 4, 2014 and September 2016 MRIs.  (R. at 19.)  Indeed, having already included degenerative disc disease with

chronic sacroiliitis among Plaintiff's severe impairments, but having concluded

that Plaintiff did not have an impairment or combination of impairments that met

Listing 1.04 (Disorders of the spine), and after citing the aforementioned MRIs, the

ALJ explained: "Despite the lack of neurological deficits, the above supports Dr.

Lazzara's opinion regarding such postural activities and the [RFC] herein finds the

claimant limited to occasional stooping and squatting." (R. at 13, 19, 21.) In other

words, the ALJ took all of this information into account in formulating the RFC,

and it is not for this Court to reformulate it where, as here, the ALJ's finding fell

well within the zone of choice afforded by the evidence. *See McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the

Commissioner are not subject to reversal merely because there exists in the record

substantial evidence to support a different conclusion…. This is so because there

is a 'zone of choice' within which the Commissioner can act, without the fear of

court interference.") (citation omitted).

Plaintiff also asks the Court to note similarities between Dr. Lazzara's

opinions and those of Dr. VanSickle and/or Dr. Bojrab or his office. (ECF No. 11,

PageID.1014.) As noted above, this Court cannot reweigh the evidence. *Mullins*,

680 F.2d at 472; *Haun*, 107 F.App'x at 465. Moreover, substantial evidence for

the RFC's exertional limitation of light work and occasional postural limitations

can be found in state agency medical consultant Dr. Abbasi's August 24, 2016

physical RFC assessment (R. at 85-86, 89, 102-103, 106), and medical consultant Dr. Dees's May 8, 2017 arguable affirmation thereof (R. at 812), to each of which the ALJ assigned "significant weight."  (R. at 22.)  Plaintiff has failed to show that the ALJ's treatment of this evidence was errant or how it falls outside the ALJ's legitimate zone of choice.  *See Biestek v. Comm. of Soc. Sec.*, 880 F.3d at 783 (6th Cir. 2017) ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.").[5]

Finally, Plaintiff contends that the ALJ "does not identify what basis he has for concluding that reduced range of motion and pain supports reduced stooping and squatting, but that it didn't support reduced sitting or standing."  (ECF No. 11, PageID.1014.)  However, even if this were true, it is not fatal to the ALJ's analysis of the consultative examiner's opinion.  *See Shannon v. Comm'r of Soc. Sec.*, No. 16-CV-10179, 2017 WL 6460298, at *4 (E.D. Mich. Oct. 13, 2017) ("because Dr. Shelby-Lane was not a treating physician, the ALJ was not required to give 'good reasons' for deviating from her opinion.") (Majzoub, M.J.), *report and recommendation adopted*, No. 16-CV-10179, 2017 WL 6450889 (E.D. Mich. Dec. 18, 2017) (Goldsmith, J.).

---

[5] Similarly as she did with Dr. Junn's opinion, Plaintiff mentions her objection to the ALJ's reliance on the non-examining DDS opinions but confines her arguments "to those raised in [her] brief."  (ECF No. 11, PageID.1012 n.1.)

### F.    Conclusion

Plaintiff advocates that adoption of Dr. VanSickle's opinions within the

MSSs or Dr. Lazzara's opinions set forth in the CE report "would preclude even

sedentary employment[,]" if not also "any regular competitive employment."  (*See*

ECF No. 11, PageID.1011, 1013, 1014.)  However, in the end, Plaintiff has the

burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.").  As

explained above, Plaintiff has not shown legal error that would upend the ALJ's

decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court

**DENY** Plaintiff's motion for summary judgment (ECF No. 11), **GRANT**

Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 21, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE